# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANE DOE, *Plaintiff*, v. RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, *et al.*, *Defendants*. | CASE NO. 3:19-cv-00070 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

On November 11, 2019, Plaintiff Jane Doe filed a three-count complaint against the Rector and Visitors of the University of Virginia and Chris Ghaemmaghami, the interim chief executive officer of the University of Virginia Medical Center,[1] ("Defendants") in relation to treatment following her attempted suicide on January 11, 2018.

This complaint is substantively identical to the proposed amended complaint filed with the Court in a prior version of this action, aside from the elimination of certain medical-care-provider defendants the Court previously found qualifiedly immune from suit. *Doe v. Sutton-Wallace*, No. 3:18-cv-00041 ("*Doe I*") (Dkt. 38-2).[2] The Court denied Plaintiff's motion to amend her complaint in *Doe I* because it was untimely, and the Court dismissed her suit without prejudice because Plaintiff failed to establish Article III standing. *Doe v. Sutton-Wallace*, No. 3:18-cv-00041

---

[1] All parties are sued in their official capacities. Dkt. 1 at ¶¶ 2–3.

[2] The complaint filed in the current action also eliminates Count IV of the proposed amended complaint in *Doe I*, which was raised only against the medical-care-provider defendants in *Doe I*.

(Dkt. 54), 2019 WL 5088769 (W.D. Va. Oct. 10, 2019).[3] As with *Doe I*, Plaintiff has again failed to establish that the Court has subject matter jurisdiction to adjudicate her claims for injunctive relief in this suit and, further, the Eleventh Amendment bars her claims for declaratory relief. Therefore, the Court will grant Defendants' motion for judgment on the pleadings.

## I. Alleged Factual Background

Plaintiff alleges that she attempted suicide on January 11, 2018, by running a hose from the exhaust pipe of her car into its passenger compartment. Dkt. 1 at ¶ 4. A law enforcement officer found Plaintiff in her car, and she was taken to UVA Medical Center's emergency department, pursuant to a "paperless" Emergency Custody Order ("ECO"). *Id.* at ¶¶ 5–6. Plaintiff alleges that at all relevant times she was "competent to make decisions concerning her treatment," *id.* at ¶ 13, despite being an unwilling patient. *See id.* at ¶¶ 6, 8–9, 12.

Plaintiff alleges that her medical providers extracted blood and urine samples over her objections. *Id.* at ¶¶ 8–9. Upon information and belief, Plaintiff alleges medical care providers at UVA Medical Center ordered the administration of various medications in order to restrain her, including Zyprexa, a psychoactive drug; Benadryl; ketamine; and Ativan, a sedative also used to combat anxiety. *Id.* at ¶¶ 7, 9. Plaintiff claims that she was not advised of the drugs administered to her, nor told of their likely effects or side effects. *Id.* at ¶ 9.

In order to extract a blood sample, Plaintiff alleges that medical care providers surrounded Plaintiff, her arm was held against her wishes, and blood was then extracted from her arm. *Id.* at ¶ 8. She further claims that the medical care providers placed her in physical restraints "for

---

[3] Plaintiff then appealed this Court's decision to the Fourth Circuit, *Doe v. Sutton-Wallace*, No. 3:18-cv-00041, *appeal docketed*, No. 19-2252 (4th Cir. Nov. 7, 2019), later dropping the then-chief medical officer of UVA Medical, Pamela Sutton-Wallace, as a defendant to the suit, *Doe v. Syverud*, No. 19-2252 (Dkt. 20) (4th Cir. Dec. 11, 2019). The appeal in Plaintiff's first suit remains pending.

the sole purpose of extracting urine," *id*. at ¶ 11, using a catheter, *id*. at ¶ 12. Plaintiff claims that she "is currently diagnosed with post traumatic [*sic*] stress disorder ["PTSD"] and has been actively involved in treatment for that condition" and that the conduct of UVA Medical Center's employees "severely exacerbated her condition." *Id.* at ¶ 14.

Plaintiff alleges that she has been "subject to dozens of [ECOs] in the past and in each instance she was taken to UVA Medical Center." *Id.* at ¶ 16. She further alleges that UVA Medical Center is the only hospital where people who live in the Charlottesville area subject to ECOs are taken. *Id.* Given her PTSD diagnoses and mental health history, Plaintiff alleges that "it is likely that there will be another instance in which Jane Doe will be taken to UVA Medical Center under an emergency custody order and that she will again be forced to allow a sample of blood and urine to be taken from her." *Id.* at ¶ 17.

On November 22, 2019, Plaintiff filed this action against the Rector and Visitors of the University of Virginia and Chris Ghaemmaghami, the interim chief executive officer of the University of Virginia Medical Center—in their official capacities—claiming a violation of her "protected liberty interest in refusing unwanted medical treatment, including, but not limited to psychoactive medications and intrusive medical procedures" (Count I); violation of her "protected liberty interest in knowing what drugs she is being administered and to give informed consent," pursuant to the Fourteenth Amendment (Count II); and her right, pursuant to the Fourth and Fourteenth Amendments, "to be free of restraints, either medical or physical" (Count III).

Plaintiff seeks a declaratory judgment stating that 1) she had a constitutional right "to refuse to allow her blood and urine to be forcibly taken from her on January 11, 2018" and that the conduct described in the complaint violated that right; 2) she had a constitutional right "to know what medications were administered to her on January 11, 2018, their intended effect and any

3

possible adverse effects" and that the conduct described in the complaint violated that right; and 3) restraining Jane Doe on January 11, 2018 with "medications, brute force and physical restraints violated her right to be free of restraints." *Id.* at 5–6.

She also seeks injunctive relief to require all medical care providers at UVA Medical Center 1)"to respect the right of Plaintiff, so long as she is competent, to refuse medication or other treatment"; 2) "to inform Plaintiff of the medications being administered to her, their intended effect and any possible adverse effects and to obtain consent for the use of those medications"; and 3) "not to use medical or physical restraints on Plaintiff for the purpose of administering medications or providing treatment against her wishes."[4] *Id.*

On February 25, 2020, the Defendants filed a joint motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 22. The parties later provided notice to the Court, pursuant to Local Rule 11(b), of their intent to submit the motion and all briefing for consideration without a hearing. Dkt. 31. The motion has been fully briefed and is ripe for disposition.

## II.     Standard of Review

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is made after pleadings are closed, "but early enough not to delay trial." The standard for Rule 12(c) motions is the same as for motions made pursuant to Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Accordingly, "we assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [Plaintiff's] favor." *Id.* However, the complaint must state a claim that is plausible on its face, and the Court will not

---

[4] In addition to her requests for declaratory and injunctive relief, she also seeks attorney's fees and costs. Dkt. 1 at 6.

accord the presumption of truth to legal conclusions couched as factual allegations. *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 582 (4th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986); *SD3, LLC v. Black & Decker, Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

### III. Analysis

A. Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars Plaintiff's requests for declaratory relief. Plaintiff does not provide any counterargument in its briefing to contest this claim. The Eleventh Amendment provides States with immunity from suit by citizens in federal court, but *Ex parte Young*, 209 U.S. 123 (1908) provides an exception where "private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd* 140 S. Ct. 994 (2020). In order to invoke the exception under *Ex parte Young*, "the plaintiff must identify and seek prospective equitable relief from an *ongoing* violation of federal law." *Id.* (emphasis in original).

As the Supreme Court has emphasized, the exception is a narrow one, "[i]t applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Simply put, this means that the Eleventh Amendment bars suits seeking declaratory relief where a federal court is asked to declare that the prior conduct of a State, its

instrumentalities, or its officials violated the law. *Green v. Mansour*, 474 U.S. 64, 65, 73–74 (1985).

That is precisely the sort of declaratory relief that Plaintiff seeks in this action— specifically, she seeks an Order from the Court declaring that the state and its agents violated her constitutional rights on January 31, 2018. The Eleventh Amendment protects the State, its instrumentalities, and its officials from this type of claim, and thus the Defendants' motion for judgment on the pleadings will be granted on all claims to the extent that Plaintiff seeks declaratory relief.

B. Claims for Injunctive Relief

The Court dismissed *Doe I* without prejudice because Plaintiff had failed to establish that the Court had subject matter jurisdiction to adjudicate her claim for injunctive relief claim against the then-chief executive officer of UVA Medical Center, Pamela Sutton-Wallace. *Doe v. Sutton-Wallace*, 2019 WL 5088769 at *7. Because she has, again, failed to demonstrate that she has met the "irreducible constitutional minimum" of Article III standing, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), the Court will dismiss the injunctive relief claims in this action for lack of subject matter jurisdiction as well.

In order to invoke the Court's subject matter jurisdiction under Article III of the U.S. Constitution, Plaintiff must allege an actual case or controversy, which in turn requires her to demonstrate standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In order to establish standing, Plaintiff must establish that (1) she has suffered (or will imminently suffer) a concrete and particularized injury in fact; (2) that injury is "fairly traceable" to the challenged conduct" and 3) the injury is "likely to be redressed by a favorable judicial decision." *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). In seeking a permanent injunction, Plaintiff seeks prospective relief,

and she must make "a showing of [a] real or immediate threat that [she] will be wronged again" in order to meet the injury-in-fact requirement. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Raub v. Campbell*, 785 F.3d 876, 885–86 (4th Cir. 2015) ("Where a § 1983 plaintiff also seeks injunctive relief, it will not be granted absent the plaintiff's showing that there is a real or immediate threat that [she] will be wronged again . . . in a similar way." (internal quotations and citations omitted)). Even where a plaintiff could establish that her constitutional rights were violated, "past wrongs do not in themselves amount to that real and immediate threat of injury." *Raub*, 785 F.3d at 886 (internal quotations omitted).

At bottom, Plaintiff "must allege an injury that is concrete, particularized, and immediately threatening" in order to establish that she has met the minimum constitutional requirements for Article III standing. *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019); *see Spokeo*, 136 S. Ct. at 1548 ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (internal citations and quotations omitted)). The Fourth Circuit has recognized that the concept of imminence is "somewhat elastic"; nevertheless, the injury must be "certainly impending to serve as the basis for standing in a suit for injunctive relief." *Griffin*, 912 F.3d at 653 (internal quotations and citations omitted).

Plaintiff argues that her complaint satisfies this requirement. She points to allegations in the complaint that she "has been subject to dozens of emergency custody orders in the past and in each instance she was taken to UVA Medical Center," Dkt. 1 at ¶ 16, and "[g]iven her diagnosis of PTSD and her mental health history, it is *likely* that there will be another instance in which Jane Doe will be taken to UVA Medical Center under an emergency custody order and that she will again be forced to allow a sample of blood and urine to be taken from her," *id.* at ¶ 17 (emphasis

supplied). Plaintiff argues that those allegations satisfy Article III's standing requirement because they show that "the conduct of the defendant(s) is ongoing and that there is a real threat that it will happen to plaintiff." Dkt. 29 at 7. In support of this view of the law, Plaintiff cites to a single Eleventh Circuit case from 1999, *Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999). However, even that case does not support her reading of the Article III standing requirement. Rather, that case states that *Ex parte Young*'s requirement that injunctive relief be prospective can be satisfied where there is an "ongoing and continuous" threat of future enforcement.

Plaintiff has not alleged any harm that is "certainly impending." *Griffin*, 912 F.3d at 653; *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Thus, we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (alteration in original) (internal quotations and citations omitted)). Instead, she has alleged that at some unidentified time, date, and place, it is likely that she will attempt to commit suicide, will be subject to an ECO, and will be brought to UVA where she will experience the same treatment she did on January 31, 2018.[5] Even if, as Plaintiff's allegations state, it is *possible* or even likely that she will be subject to the allegedly unconstitutional treatment again, that is insufficient to meet the injury-in-fact aspect of Article III standing. The Supreme Court has clearly rejected the "objectively reasonable likelihood" standard as inconsistent with its requirement that the alleged injury be "certainly impending to constitute injury in fact." *Clapper*, 568 U.S. at 410; *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017)

---

[5] As Defendants note and Plaintiff fails to rebut—the complaint does not include any allegations that Plaintiff received similar allegedly unconstitutional treatment on any of the other "dozens" of occasions she was brought to UVA Medical Center pursuant to an ECO. Indeed, she does not allege any facts at all that provide any further factual enhancement to that allegation.

8

(stating that in *Clapper* the Supreme Court rejected the Second Circuit's "objectively reasonable likelihood" standard for Article III standing). Thus, her alleged threatened injury is insufficiently "concrete" and "imminent" in the eyes of Article III.[6]

Moreover, Defendants argue (just as they did in *Doe I*), that the Court should refuse to assume that Plaintiff will attempt suicide in the future—regardless of the facts alleged in Plaintiff's complaint—as suicide and the attempt thereof remain a common law crime in Virginia. *Brown v. Harris*, 240 F.3d 383, 386 (4th Cir. 2001) (quoting *Wackwitz v. Roy*, 244 Va. 60 (1992)). As this Court articulated in *Doe I*, courts "assume that plaintiffs will conduct their activities within the law." *Doe v. Sutton-Wallace*, No. 3:18-cv-00041, 2019 WL 5088769, at *6 (W.D. Va. Oct. 10, 2019) (quoting *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 249 (4th Cir. 2005); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("[W]e are nonetheless unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners"). Plaintiff, again, has not addressed this principle—much less demonstrated why it should not apply in this case.

## Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings will be granted, because her claims for declaratory relief are barred by the Eleventh Amendment and

---

[6] Defendant also argues, and Plaintiff vehemently contests, that the denial of Plaintiff's motion to amend her complaint in *Doe I* precludes her from bringing the same claims in the instant case. Because she does not have Article III standing to bring the instant case, the Court need not address this issue.

9

because she lacks standing under Article III to bring her claims for injunctive relief. An appropriate Order shall issue.

Entered this 28th day of August, 2020.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE